FREDDIE RICHARDSON
SBI 517938B.
South Woods State Prison
215 South Burlington Road
Bridgeton, NJ 08302

RECEIVED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAN 2 1 2020

AT 8:30_____M
WILLIAM T. WALSH
CLERK

FREDDIE RICHARDSON,

               *Plaintiff,*

vs.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, RUTGERS UNIVERSITY
– UNIVERSITY CORRECTIONAL
HEALTH CARE, SANDRA CONNOLLY,
M.D., NURSE ROE, JOHN DOES 1-10,

               *Defendants*.

Docket No.

## Civil Action

## COMPLAINT

Freddie Richardson, by way of Complaint, states as follows:

1.)      This is a Complaint stemming form the mistreatment of Plaintiff's serious medical conditions and disabilities while in the custody of the New Jersey Department of Corrections.

2.)   First, Plaintiff suffered from extreme pain and other symptoms stemming from serious orthopedic conditions.  Defendants ignored these conditions for almost two years.

3.)   Second, Plaintiff injured himself when he fell off of a top bunk during an epileptic seizure.  At the time of his fall, prison officials knew but ignored the fact that Plaintiff should have been bottom-bunk restricted due to both his orthopedic conditions and his epilepsy.

## JURISDICTION

4.)   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws and Constitution of the United States, namely whether Defendants violated Plaintiff's rights under the U.S. Constitution and the Americans with Disabilities Act.

5.)   This Court has supplemental subject matter jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

6.)   Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## THE PARTIES AND SERVICE OF DEFENDANTS

7.)   Plaintiff Freddie Richardson, whose date of birth is January 28, 1964, is a resident of New Jersey, who, since April 7, 2017, has been in the custody of the New Jersey Department of Corrections.  His SBI is 517938B.

8.)   Defendant New Jersey Department of Corrections may be served at its headquarters at 1300 Stuyvesant Avenue, Trenton, NJ 08625.

9.)   Defendant Rutgers University – University Correctional Health Care ("UCHC") is an entity that has contracted with the New Jersey Department of Corrections to provide health care in all New Jersey State prisons.  It's headquarters, where it may be served is: 7 College Avenue, Room 1111, New Brunswick, NJ 08901.

10.)  Defendant Sandra Connolly, M.D. is an employee of UCHC.  She can be served at her place of employment, Northern State Prison, 168 Frontage Road, Newark, NJ 07114.

## FACTS

11.)   From approximately July 1, 2017 until approximately January 6, 2020, Plaintiff Freddie Richardson was an inmate at Northern State Prison.

12.)   In June 2014, before becoming incarcerated, Richardson suffered serious injuries during a motor vehicle accident.

13.)   He suffered spinal factures at C7 and C1.  He broke his jaw and had to have a plate implanted to treat the break.  He also suffered fractured ribs and a collapsed lung.

14.)   Plaintiff's injuries were treated at University Hospital Trauma Center in Newark, New Jersey.

15.)   After the accident, he began to suffer from severe lower back pain, and he developed anxiety, depression, and migraines.

16.)   The lower lumbar pain was the result of canal stenosis, which was diagnosed after the accident.

17.)   After being released from University Hospital, he began pain management and psychological care at Urban Care in Newark, New Jersey.

18.)   As a result of Plaintiff's injuries, Plaintiff was in pain management treatment from 2014 until the time that he was placed into the custody of the New Jersey Department of Corrections.

19.)   Upon Plaintiff's sentencing in April 7, 2017, the judge recommended that Plaintiff be placed in a medical facility due to the criticalness of his medical condition.

20.)   The Department of Corrections ignored this recommendation and knowingly placed Richardson in the general population where the judge felt his medical needs could not be adequately addressed.

21.)   When Plaintiff became incarcerated at Northern State Prison, on or about July 1, 2017, he let Rutgers – UCHC staff, Defendants John Does 1-9, know that he had epilepsy, migraines, high blood pressures, anxiety, depression, needed a bottom bunk restriction, needed a cane to walk, and that he was in a great deal of daily pain from his spine having been broken in two places and from the canal stenosis of the lumbar spine.

3

22.) Plaintiff's symptoms included extreme pain in his lumbar spine that shoots down his legs, paresthesia, urinary urgency, and sudden involuntary soiling.

23.) Without medical papers from University Hospital or Urban Care, Defendants would not continue Plaintiff's pain management.

24.) Plaintiff filed multiple requests with Defendants to have his medical papers from University Hospital and Urban Care transferred to Northern State Prison.

25.) His requests were ignored for at least a year and half.

26.) Plaintiff filed numerous grievances and told Defendants orally about the amount of pain he was in.

27.) No action was ever taken by Defendants to obtain Plaintiff's medical records from University Hospital and Urban Care, and no independent efforts were taken to diagnose or treat Plaintiff's pain until Plaintiff obtained a lawyer to write to Defendants about their deliberate indifferencef.

28.) When Defendants finally obtained Plaintiff's medical files, Defendant Dr. Connolly told Plaintiff his x-rays showed that his bones were never broken and that this pain was just the result of arthritis.

29.) Discovery will show that Dr. Connolly's statement was a deliberate lie, used to justify Defendants' eighteen months' denial of medical care.

30.) After filing several more grievances, an MRI was finally taken at St. Francis Medical Center on April 2, 2019.

31.) The MRI showed severe canal stenosis with ancillary osteophytes causing most compression at L4-L5 and L5-S1, causing lumbar radiculopathy and cauda equina syndrome.

32.) A neurosurgeon told Plaintiff that he needed surgery on his spine.

33.) As retaliation for all his grievances and complaints, on June 26, 2019, Defendants moved Plaintiff from a bottom bunk on F-Unit to a top bunk on C-Unit (Cell # 102).

34.) At the time, bottom bunks elsewhere were available.

35.) Plaintiff told the A.M. shift officer, John Doe 10, that he was bottom bunk restricted.

36.) The A.M. officer, Defendant John Doe 10, told him, "That's a medical issue."

37.) Plaintiff told the A.M. shift nurse, Defendant Nurse Roe, who brought Plaintiff his medication, that he was bottom bunk restricted. She replied, "That's a DOC issue."

38.) Plaintiff was essentially silenced because the DOC and UCHC each shirked responsibility for Plaintiff's bottom bunk restriction off on one another.

39.) To make matters worse, Defendants removed the bunk ladder, a ladder that is required by state regulation, making it even harder for Plaintiff to use the top bunk.

40.) Somehow, Plaintiff, straining through severe pain, mounted the top bunk bed without the assistance of a ladder.

41.) At about 1 AM on June 29, 2019, Plaintiff awoke on the top bunk and had to use the toilet.

42.) He leaned up and had an epileptic seizure.

43.) He fell off the top bunk and struck his back on the concrete floor.

44.) Plaintiff was in severe pain from the fall.

45.) Plaintiff filed a timely Notice of Tort Claim regarding the fall from his bunk.

## COUNT 1
### 42 U.S.C. § 1983 – Eighth Amendment
### Deliberate Indifference to a Serious Medical Need – Painful Spinal Conditions

46.) Plaintiff entered Northern State Prison with a serious medical need. Specifically, he had back pain from broken bones at C1 and C7 and from severe spinal stenosis of the lower lumbar spine, which was also causing him radiculopathy, paresthesia, immobility, and problems with his bowels and bladder.

47.) Severely painful orthopedic conditions such as Plaintiff's are serious medical needs.

48.) Defendants were deliberately indifferent to Plaintiff's serious medical need by, among other things, ignoring his requests to have his medical charts from University Hospital

and Urban Care transferred so that pain management could continue; not initiating pain management; lying about what the x-rays showed; and not ordering any diagnosis or treatment for almost two years.

49.) Defendant Connolly deliberately misread or failed to read Plaintiff's x-rays so as to justify the denial of medical care.

50.) Defendant Rutgers University – UCHC and New Jersey Department of Corrections had a policy, practice, or custom of ignoring prisoner requests to obtain medical charts from outside institutions so that they could justify withholding medical care.

51.) Defendant Rutgers University – UCHC and New Jersey Department of Corrections had a policy, practice, or custom of understaffing their medical operations at Northern State Prison with the knowledge that this would cause the serious medical needs of prisoners to go untreated.

52.) Defendant Rutgers University – UCHC and New Jersey Department of Corrections had a policy, practice, or custom of ignoring medical grievances at Northern State Prison with the knowledge that this would cause the serious medical needs of prisoners to go untreated.

53.) Defendant Rutgers University – UCHC and New Jersey Department of Corrections had a policy, practice, or custom of instructing staff to not review or to lie about the information in outside medical records of inmates so as to justify the denial of treatment of serious medical conditions.

54.) Defendant Rutgers University – UCHC and New Jersey Department of Corrections had a policy, practice, or custom of instructing staff to discount complaints of pain by prisoners in an effort to cut costs associated with pain management needed for serious medical conditions.

55.) John Doe Defendants, by placing Plaintiff on a top bunk that did not even have a ladder, showed more than deliberate indifference – but rather – clear intent to make Plaintiff suffer extreme pain.

## COUNT 2
### 42 U.S.C. § 1983 – Eighth Amendment
### Deliberate Indifference to a Serious Medical Need – Epilepsy

56.)   Defendant had a serious medical need, specifically, epilepsy.

57.)   Defendants knew Plaintiff was bottom-bunk restricted due to the risk of falls posed by his epilepsy.

58.)   Defendants purposely placed Plaintiff in a top bunk, as evidenced by the facts that bottom bunks were available and the ladder was removed from the cell.  This action was cruelly calculated to cause Plaintiff pain and humiliation and to present the risk that he would fall.

59.)   Placing him on the top bunk was punishment for having filed many grievances about the lack of medical care, and about other problems he was experiencing at Northern State Prison.

## COUNT 3
### 42 U.S.C. § 1983 – First Amendment

60.)   Plaintiff exercised his First Amendment right to petition the government for a redress of grievances when he wrote and made oral complaints about the deliberate indifference to his serious medical needs.

61.)   Placing Plaintiff on a top bunk was retaliation designed to punish Plaintiff for exercising his First Amendment right to petition the government for redress of grievances.

## COUNT 4
### Americans With Disabilities Act

62.)   Plaintiff is a qualified individual under the Americans with Disabilities Act.

63.)   Plaintiff has a disability which substantially interferes with the activities of daily living.

64.)   Plaintiff is entitled to full enjoyment of the benefit of a safe bed that he can access without excessive pain at Northern State Prison.

65.)   Plaintiff was denied a safe bed by being forced to sleep in the top bunk while he had epilepsy.

66.) Plaintiff was denied reasonably pain-free access to a safe bed by denying him a bottom bunk and moreover, removing the ladder from his cell.

67.) Defendants Rutgers – UCHC and New Jersey Department of Corrections are public entities who denied Plaintiff the benefit of a safe bed to sleep in due to his disability.

68.) Defendants Rutgers – UCHC and New Jersey Department of Corrections are public entities who denied Plaintiff the reasonable accommodation of a bottom bunk, or at least, a ladder to reach the top bunk.

69.) Defendants Rutgers – UCHC and New Jersey Department of Corrections are therefore liable to Plaintiff under the Americans with Disabilities Act.

## COUNT 5
### Failure to Accommodate a Disability – New Jersey Law Against Discrimination

70.) Plaintiff's disabilities required the reasonable accommodation of a bottom bunk in order that Plaintiff could have a place to sleep that was accessible without undue pain.

71.) Defendants denied the Plaintiff a reasonable accommodation of a bottom bunk, leading Plaintiff to suffer a fall and damages.

## COUNT 6
### Negligence

72.) Defendants were negligent in placing Plaintiff, a prisoner with epilepsy, on a top bunk.

73.) Defendants were also negligent in the provision on health care to Plaintiff in that they neglected to give him proper pain management for almost two years.

## COUNT 7
### Gross Negligence

74.) Defendants were grossly negligent by placing a prisoner with epilepsy in a top bunk.

75.) Defendants were also grossly negligent in the provision on health care to Plaintiff in that they neglected to give him proper pain management for almost two years.

8

**Wherefore,** Plaintiff Freddie Richardson demands judgment against Defendants, together with court costs, applicable statutory attorney fees, and other such relief as the court may deem just and appropriate.

FREDDIE RICHARDSON

Date: 1/17/2020

## JURY DEMAND

Plaintiff hereby demands a trial by jury.