**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FREDDIE RICHARDSON,

                Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, *et al.*,

                Defendants.

Civil Action No. 20-679 (MAS) (LHG)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on the Court's *sua sponte* screening of Plaintiff Freddie Richardson's ("Plaintiff") civil complaint (ECF No. 1) pursuant to 28 U.S.C. § 1915(e)(2)(B). Pursuant to the statute, the Court must review Plaintiff's complaint and dismiss any claim which is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. For the reasons set forth below, the Court permits Plaintiff's deliberate indifference claims to proceed against Defendant Connolly and the John Doe and Jane Roe Defendants. In addition, the Court permits Plaintiff's negligence claims to proceed against Rutgers UCHC, Defendant Connolly, and the John Doe and Jane Roe Defendants. The Court dismisses Plaintiff's remaining claims.

**I.    BACKGROUND**

Plaintiff is a convicted state prisoner incarcerated in Northern State Prison in Newark, New Jersey. (ECF No. 1 at 3.) Plaintiff alleges that, prior to his incarceration, he suffered from epilepsy and had a history of severe back pain stemming from a car injury in which Plaintiff fractured parts

of his spine. (*Id.* at 3-4.) During his time in Northern State Prison, Plaintiff frequently complained of back pain but was refused pain management or other treatment "for at least a year and a half." (*Id.* at 4.) After the prison eventually obtained Plaintiff's medical records, Defendant Dr. Connolly "told Plaintiff his x-rays showed that his bones were never broken and that his pain was just the result of arthritis." (*Id.*) Plaintiff contends that this "was a deliberate lie, used to justify" the previous denial of treatment. (*Id.*) Plaintiff continued to complain about his pain, following which Plaintiff received an MRI confirming that he suffered from "severe canal stenosis with ancillary osteophytes" causing spinal compression, lumbar radiculopathy, and "cauda equina syndrome." (*Id.*)

The prison subsequently moved Plaintiff's bed assignment from a bottom bunk to a top bunk, which Plaintiff contends was in "retaliation for his grievances and complaints." (*Id.*) Although Plaintiff asserts that this was retaliatory action, he does not identify which named Defendant was responsible for the placement or possessed the alleged retaliatory motive. Plaintiff complained to an officer assigned to his unit, who told Plaintiff he would need to speak with the medical department. (*Id.* at 5.) Plaintiff also complained to a nurse who suggested that he should speak to prison officials. (*Id.* at 5.) Plaintiff alleges that entering the bed caused him significant pain. (*Id.*) On one occasion when Plaintiff attempted to exit the bed, he had an epileptic seizure then fell and injured himself. (*Id.*)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen Plaintiff's complaint and must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil

of his spine. (*Id.* at 3-4.) During his time in Northern State Prison, Plaintiff frequently complained of back pain but was refused pain management or other treatment "for at least a year and a half." (*Id.* at 4.) After the prison eventually obtained Plaintiff's medical records, Defendant Dr. Connolly "told Plaintiff his x-rays showed that his bones were never broken and that his pain was just the result of arthritis." (*Id.*) Plaintiff contends that this "was a deliberate lie, used to justify" the previous denial of treatment. (*Id.*) Plaintiff continued to complain about his pain, following which Plaintiff received an MRI confirming that he suffered from "severe canal stenosis with ancillary osteophytes" causing spinal compression, lumbar radiculopathy, and "cauda equina syndrome." (*Id.*)

The prison subsequently moved Plaintiff's bed assignment from a bottom bunk to a top bunk, which Plaintiff contends was in "retaliation for his grievances and complaints." (*Id.*) Although Plaintiff asserts that this was retaliatory action, he does not identify which named Defendant was responsible for the placement or possessed the alleged retaliatory motive. Plaintiff complained to an officer assigned to his unit, who told Plaintiff he would need to speak with the medical department. (*Id.* at 5.) Plaintiff also complained to a nurse who suggested that he should speak to prison officials. (*Id.* at 5.) Plaintiff alleges that entering the bed caused him significant pain. (*Id.*) On one occasion when Plaintiff attempted to exit the bed, he had an epileptic seizure then fell and injured himself. (*Id.*)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen Plaintiff's complaint and must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. DISCUSSION

In his complaint, Plaintiff seeks to raise claims pursuant to 42 U.S.C. § 1983 for deliberate indifference to medical needs against the following parties: the New Jersey Department of Corrections ("DOC"); Rutgers UCHC, the medical provider for Northern State Prison; Doctor Connolly; the nurse to whom Plaintiff raised the bunk issue; and several John Doe prison staff Defendants. (*Id.* at 5-7.) Plaintiff also seeks to raise a § 1983 claim asserting First Amendment retaliation, although he does not clearly assert which Defendant actually engaged in this alleged retaliation. (*Id.* at 7.) Plaintiff also asserts claims under the Americans with Disabilities Act ("ADA")[1] against both the DOC and Rutgers UCHC, both of whom he asserts are public entities. (*Id.* at 7-8.) Finally, Plaintiff seeks to assert state law claims for negligence and violations of New Jersey's Law Against Discrimination ("NJLAD") related to the alleged improper assignment of a top bunk. (*Id.* at 8-9.)

Turning first to Plaintiff's § 1983 claims, it is clear that the DOC is not subject to suit under the statute. As a suit against a state department "is no different from a suit against the state itself," and as states are immune from suit for money damages in federal court, the DOC is immune from suit for damages in this Court. *See Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). Likewise, a state department like the DOC is not a "person" subject to suit under the statute. *Id.*; *see also Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989). The DOC is therefore clearly immune from any suit for damages in this Court and is in any event not subject

---

[1] Although Plaintiff does not specify which type of ADA claim he wishes to pursue, the Court presumes that he is attempting to set forth a claim under Title II of the ADA. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132.

4

to suit under § 1983. Plaintiff's § 1983 claims and Plaintiff's state law claims that appear to seek only damages against the DOC are, therefore, dismissed with prejudice.

Plaintiff's § 1983 claims against Rutgers UCHC fare no better. To plead a plausible claim for relief under § 1983, a plaintiff must plead facts which would show that the named defendants had personal involvement in the alleged wrongs. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Where the named defendant is a third-party entity that contracts with the state to provide services, a plaintiff seeking to demonstrate the contractor had personal involvement in a violation must plead facts which show that the alleged constitutional violation is the result of a policy or custom put into effect by the contractor. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). A formal policy or custom will be the cause of an alleged violation where it is the "moving force" behind the violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles County v. Humphries*, 562 U.S. 29, 35-36 (2010). To plead a formal policy, a plaintiff must allege facts indicating that a decisionmaker with final authority established an applicable formal proclamation, policy, edict, or rule. *Natale*, 318 F.3d at 584. A corporate custom instead exists where a given action has not been formally approved by the decisionmaker, but is "so widespread as to have the force of law." *Id.* To plead a plausible claim against a contracting entity, a plaintiff must therefore plead either that a formally instituted policy caused the alleged violation, a policy maker violated the plaintiff's rights directly, or the policy maker at the entity failed to take affirmative action to address known inadequate existing practices such that the policymaker can be said to have been deliberately indifferent to the risk of harm posed by the practices. *Id.*

Plaintiff's complaint raises conclusory allegations that Rutgers UCHC had a "policy, practice, or custom" of taking various actions including failing to obtain medical records,

5

understaffing prisons, ignoring grievances, and "instructing staff to not review or lie" about medical records. Plaintiff, however, provides no factual allegations to support these conclusions. Plaintiff neither identified any formal policy enacted or announced by Rutgers UCHC that resulted in his mistreatment nor alleged any history of similar issues at Northern State Prison sufficient to indicate that policymakers at Rutgers UCHC should have known that there were issues with staffing, obtaining medical charts, or doctors "lying" to inmate patients. As conclusory allegations are insufficient to state a plausible claim for relief, and as Plaintiff has failed to plead facts which would show that Rutgers UCHC has adopted a policy or custom which resulted in the alleged harm in this matter, Plaintiff's § 1983 claims against Rutgers UCHC are dismissed without prejudice.

As to the remaining Defendants—Connolly, the John Doe officers, and the Jane Roe nurse—Plaintiff seeks to plead § 1983 claims for deliberate indifference to medical needs and for first amendment retaliation. The complaint fails to connect Plaintiff's retaliation claim to any specific Defendant and instead asserts claims generally. As Plaintiff has failed to plead that Connolly, the John Does, and Jane Roe nurse had any personal involvement in the alleged retaliation, that claim is dismissed without prejudice as to those Defendants. *Chavarriaga*, 806 F.3d at 222.

Having reviewed Plaintiff's deliberate indifference claims against Defendant Connolly, the John Doe Defendants, and Jane Roe Nurse, however, the Court will permit those claims to proceed. Likewise, the Court will permit Plaintiff's state law negligence claims to proceed against Defendants Rutgers UCHC, Connolly, the John Doe Defendants, and the Jane Roe Nurse.

Turning to Plaintiff's ADA and NJLAD claims raised against the DOC and Rutgers UCHC, to state a claim under the ADA or LAD,[2] Plaintiff must allege that he is "a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). Because Plaintiff appears to seek damages, and not injunctive relief, he must also plead intentional discrimination.[3] *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013). Intentional discrimination will exist only where the defendants were at least deliberately indifferent – that is, where the defendant knew that harm to a federally protected right was substantially likely and failed to act upon that likelihood. *Id.* at 262-63. In his complaint, Plaintiff does not specify who transferred him to a top bunk assignment or allege that the person who made that assignment was aware of his epilepsy or back pain issues. Although Plaintiff alleges that he told some officers and at least one nurse about his concerns with the top bunk assignment, he has not alleged that any of these individuals had the ability to change his assignment or had any hand in making the top bunk assignment. Plaintiff has therefore failed to allege that the decision maker who assigned him a top bunk knew of his disabilities. Plaintiff, consequently, has failed to plead deliberate indifference sufficient to qualify

---

[2] In evaluating claims brought pursuant to the NJLAD, courts "typically look to federal anti-discrimination law in construing [the] NJLAD," and apply the law applicable to the federal equivalent in determining whether the plaintiff states a viable claim for relief. *See, e.g., Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001). The Court must therefore evaluate Plaintiff's LAD claim using the standards applicable to Plaintiff's federal ADA claim. *Id.*

[3] The complaint is not clear as to the relief sought, but Plaintiff makes no explicit mention of any form of injunctive relief. As Plaintiff appears to have been released from prison (*see* ECF No. 5), it is doubtful that any form of injunctive relief would be applicable to Plaintiff's claims as he is no longer subject to the "services" of either the DOC or Rutgers UCHC. If Plaintiff does seek some relief other than damages via his ADA claim, he is free to file an amended complaint that clearly sets forth the non-damages relief he seeks.

as intentional discrimination and the Court dismisses Plaintiff's ADA and NJLAD claims without prejudice.

## IV. <u>CONCLUSION</u>

For the reasons expressed above, Plaintiff's deliberate indifference claims shall proceed against Defendant Connolly and the John Doe and Jane Roe Defendants, Plaintiff's negligence claims shall proceed against Rutgers UCHC, Connolly, the John Doe and Jane Roe Defendants, and Plaintiff's remaining claims shall be dismissed. An order consistent with this Opinion will be entered.

<div style="text-align: right;">
s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**
</div>

8